Thomas A. Aurelio, J.
Eelators in this proceeding on a writ of habeas corpus seek an order of this court directing respondent, New York Foundling Hospital, to return to them the infant involved herein with a view to permanent custody and adoption.
It appears that from about May, 1956, respondent has certified relators 1 ‘ as maintaining a suitable home for the care of children at board * * * between the ages of infancy and 16 years.”; that on May 31, 1956, relators signed and executed an “ Agreement Between New York Foundling Hospital and Boarding Parents” which among other things, specifically provides:
“ 1. WE UNDEBSTAND THAT ANT CHILD ENTBUSTED TO US IS PLACED IN OUB HOME FOB BOABDING CABE AND NOT WITH A VIEW TOWABD ADOPTION. WE AGBEE TO EETUBN SUCH CHILD TO THE NEW TOBK FOUNDLING AT ONCE ON ITS BEQUEST, WHICH BEQUEST MAT BE MADE AT ANT TIME IN THE FOUNDLING’S ABSOLUTE DISCRETION. NO ACT OB OMISSION MAT BE CONSTRUED AS A WAIVEB BT THE FOUNDLING OF THIS CONDITION. WE WILL COOPEBATE WITH THE FOUNDLING IN PLANS FOB THE TBANSFEB AND/OB DISCHABGE OF SUCH CHILD FBOM OUB HOME.” That on March 21, 1963, the infant herein — hereafter called Little Anne — was born to Nancy Pagani at the Columbia-Presbyterian Hospital in the City of New York, and on the same day the mother signed “ Authorization for Commitment ” under the terms of which she authorized the commitment of the newborn hahy to the custody of the Commissioner of Welfare of the City of New York, and authorizing said Commissioner or his duly authorized representatives to place the child in any duly authorized agency as defined in the Social Welfare Law of the State of New York (§ 371); that on March 28, 1963, Fred Pagani, Jr., husband of Nancy Pagani, signed an identical authorization as “step-father”; that pursuant to said two *236 authorizations, on or about April 5, 1963, two weeks after the birth of the child the Commissioner committed her to the care of the New York Foundling Hospital, concededly an authorized agency, as defined in section 371 of the Social "Welfare Law of the State of New York; that thereupon the Foundling Hospital placed her in the care of the relators herein where Little Anne remained until February 3, 1967, when she was removed therefrom by the respondent against the wishes and without the consent or approval of the relators.
The petition alleges, among other things, that Nancy Pagani, mother of the infant and her husband executed a deed of guardianship dated February 13, 1967, which conferred guardianship of the infant upon the relators herein to the exclusion of all others and have consented therein to the adoption of the child by the relators; that as a result of the four-year period of uninterrupted custody of Little Anne, a normal family relationship has developed in the Márchese home which consists of relators, two daughters 20 and 16 years of age, a son 16 years of age and Belinda Miranda now 12 years of age who was also placed in the home 10 years ago by respondent and that the relationship is based upon mutual love and affection; that the relators have treated the infant as their own and have in the truest sense devoted themselves to her care and welfare, attending to all her needs during infancy and at times of childhood illness; that from time to time relators had requested of respondent permission to legally adopt Little Anne and had discussed the matter with personnel of respondent and “were given evasive response but were led to believe that, in time such permission would be granted.” In this connection it should be noted that both relators admitted on the stand they knew and understood that the placement in their home was for boarding care only on a temporary basis and not with a view toward adoption. During the past 11 years three other children were boarded with relators, two of whom were returned to their parents and the other, a boy, was removed because he was unmanageable. In recent years relators were paid by the Welfare Department $100 monthly for each child and $30 every three months for each child for clothing.
In its return to the writ of habeas corpus respondent, among other things, contends that since the mother of the infant and her husband committed her to the custody of the Commissioner of Welfare of the City of New York and said Commissioner having pursuant to law placed the infant with respondent, an authorized agency, respondent pursuant to subdivision 2 of section 383 has the authority, in its discretion to ‘ ‘ remove such *237 child from the home where placed or boarded.”; that the custody of the infant is in the Commissioner and the interest of the infant requires that custody should so continue and that future plans for said infant made by respondent herein, as agent for the Commissioner, should also continue; and that said infant is in all respects an adoptable child, and respondent placed such child in a foster home with a view toward adoption, where said child will receive proper and loving care and in which home the material and temporal interest of said child will be secured.
The respondent called six witnesses consisting of a psychologist, case workers and social workers who had contacts with relators before and after the placement of Little Anne in their care as foster parents on a temporary basis. They gave testimony concerning contacts, visits and meetings with relators in relation to the child’s welfare and their reports thereon, and all denied that relators had at any time requested permission to adopt Little Anne and that none of them had ever given encouragement or misled them into believing, as relators claim, that they could in time obtain permission for the adoption.
After giving careful consideration to the claim of the relators and all the evidence given in support thereof and upon the entire record before me, I have reluctantly reached the conclusion that relators have failed to establish their right to the return and continued custody of Little Anne. Further, I find and decide that respondent honestly and in good faith, and for sufficient cause, soundly exercised the discretionary power it has under subdivision 2 of section 383 of the Social Welfare Law of the State of New York to remove a child from the home where placed or boarded and that the removal in this ease was not an arbitrary act.
The court wants to make it clear that the determination thus arrived at, primarily, is based on the inescapable conclusion from the credible evidence that it will be in the best interests and welfare of Little Anne to move on to a more contemporary environment which I am satisfied from the evidence respondent found for her in the exercise of its discretion pursuant to law. I am of the opinion that this child, now four years of age, has reached the period in her few years of life when the intellectual development and emotional needs must be given careful consideration without sentimentalism. It is not meant by this to detract one iota from the well-meaning and genuine feeling and attachment, love and affection the relators’ family as a whole, including Belinda Miranda, has developed for Little Anne. It is now firmly established by innumerable court decisions that the paramount consideration in a custody proceeding is and *238 must be the best interests and welfare of the child. Indeed, even the rights of natural parents are subordinated to what is best when the facts and circumstances require such a determination. Considered in this light the deed of guardianship purportedly executed by the mother of the child and her husband, is, in the circumstances here involved, ineffective to arrest the power of the Supreme Court to determine what is best for the child. Moreover, since it appears the child’s mother and her husband completely abandoned her to the custody of the Commissioner of Welfare they have forfeited whatever right they had to give custody to relators by means of a deed of guardianship with or without the right of adoption.
The parting of Little Anne from the Márchese family, of course, was heartrending. Whether they will meet again, I know not. If they do, no doubt, it will be a joyful meeting. If not, why, then, the parting was a lasting one and it is hoped the Márchese family will understand and realize it was necessary in the best interests and welfare of Little Anne whom they love so dearly. The writ is dismissed. No costs allowed.